IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CAROLE BERNARD-PIPER,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | **CIVIL ACTION NO.:** _____ |
| **CBRE, INC. AND TRAMMEL CROW COMPANY, LLC** | § | |
| | § | |
| | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Carole Bernard-Piper ("Plaintiff" or "Carole"), complains of Defendants CBRE, Inc, a foreign for-profit corporation, ("CBRE" or "Defendant") and Trammell Crow Company, LLC, a foreign limited liability company, ("Trammell Crow" or "Defendant") (sometimes hereafter referred to collectively as "Defendants"). For causes of action Plaintiff shows the Court as follows:

### I.

### INTRODUCTION

1.01    Plaintiff shows the Court that Defendants have discriminated against Plaintiff, retaliated against Plaintiff, harassed Plaintiff and subjected Plaintiff to a hostile environment in violation of 42 U.S.C. § 1981 and Title VII on the basis of her race and national origin, and in retaliation for her protected activities.

## II.

## PARTIES

2.01   Carole Bernard-Piper is an individual who is a citizen of the State of Texas and is a resident of this judicial district in Texas.  Plaintiff can be contacted in care of her undersigned counsel. The last three of Plaintiff's social security number are 208.

2.02   Defendant CBRE, Inc. is a foreign for-profit corporation which was operating a Texas office located at 2100 McKinney Avenue, Suite 600/700, Dallas, Texas 75201 and can be served through its registered agent, C. T. Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas  75201.

2.03   Defendant Trammel Crow Company, LLC is a foreign for-profit limited liability company which is operating a Texas office located at 2100 McKinney Avenue, Suite 600/700, Dallas, Texas 75201 and can be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## III.

## JURISDICTION AND VENUE

3.01   Pursuant to 28 U.S.C. § 1331, jurisdiction is appropriate in the United States District Court for the Northern District of Texas, as this action involves a question of the application of federal law, namely 42 U.S.C. § 1981, and pendent and supplemental jurisdiction of the state law counts.

3.02   Venue for all causes of action stated herein lies in the Northern District of Texas

because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. § 1391.3.03

3.03   Venue is proper as Plaintiff lives in this district, the events took place in this judicial district, and the Defendants do business in this judicial district.

## IV.

## FACTUAL ALLEGATIONS

4.01   During the entire term of her employment Plaintiff, a 65 year old African American, experienced severe discrimination, harassment and a hostile environment at Defendant based upon her race, African American, which consisted of the following.

4.02   In 1999 Plaintiff was hired by Defendants as an Assistant Controller with a salary of $63,000, where she supervised three senior accountants for the local DFW Development Accounting Team located in Chase Tower in downtown Dallas.

4.03   Each Defendant has over 15 employees.

4.04   In 2001 Plaintiff was promoted to Controller with compensation of $78,526 including a 20% annual bonus.  Dana Gescheidle, ("Dana") CPA VP Controller-In charge of the 2001 Accounting Re-Organization was Plaintiff's manager.

4.05   The DFW Development Accounting team was expanded to consolidate the Development Accounting responsibilities from other cities around the country (including another local DFW office called "the Stemmons Office" where Paul Moore ("Paul") (A&M undergraduate; non-CPA/no advance degree) had been hired as a Senior Accountant under Ken Campbell ("Ken"), CPA, Assistant Controller. The accounting staff from the Stemmons Office, which also included Sherry Beaumont ("Sherry"), Assistant Controller, was moving to Downtown Dallas under Plaintiff.

4.06    Ken, Sherry other managers were heavily involved in recruiting and hiring new staff to be located downtown. The Managers were also traveling to other cities around the country to transition/centralize the accounting records and reporting to the Downtown Dallas office. Paul Moore, as a Senior Accountant had no involvement in the transition, hiring, recruitment or management decisions.

4.07    The management team formalized an accounting test to use as a screening tool, updated the current accounting procedures and created new ones to accommodate the new centralized accounting team. Paul Moore's involvement as a Senior Accountant was minimal. The management team was working from early morning to late at night, including weekends. No Senior Accountant was working the hours the management team were working.  In 2007, Ken Campbell left the development accounting team and went over to the CBRE services team. Sherry Beaumont remained with the team and Paul Moore as a Senior Accountant was re-assigned to her.  Sherry became Paul's manager.

4.08    Paul was constantly bashing Sherry to Plaintiff insinuating that he knew more than her and would rather report to Plaintiff.  Plaintiff told him that it was not going to happen and he needed to accept the fact he reported to Sherry and to be respectful. He gave her a pretty hard time and was not cooperative at times.

4.09    In 2005 Plaintiff was promoted to Senior Controller making compensation of $135,375 including a 20% annual bonus.

4.10    In 2005, Trammell Crow became a partner in a very large medical portfolio with a municipality which handled retirement funds investments.  Plaintiff was directly responsible for the monthly, quarterly reporting and annual GAAP audit along with another accountant (Ms. Xia Vue).  It was a very lucrative deal. Trammell Crow sold its interest in the deal in 2012 and Xia and

Plaintiff received recognition by getting extra bonuses along with beautiful commemorative clocks.

4.10   In 2007 CBRE officially acquired Trammell Crow.  Dana was re-assigned and was replaced by Beau DeLuca, CPA,VP.  He previously worked for a very large real estate development company. He had current experience in Purchases and Acquisitions.

4.11   On or about November 24, 2008 Paul Moore was acting inappropriately with a Senior Accountant, Cleta Alexander. His wife Lindsay Johnson-Moore, who worked in a separate department, but same floor as Plaintiff's team, was pregnant and rumor was circulating regarding him and Cleta.  Paul was an Assistant Controller.  Paul was frequently in Cleta's cube flirting with her. Cleta ended up leaving the company.  Paul Moore continued to ingratiate himself with Beau DeLuca and Beau appeared to like it. The appearance was they were buddies.  Even though he had a lower position than some in the group, the two of them went to lunch almost every day which some including Plaintiff deemed to be inappropriate.  Even when the rumors about Paul and Cleta were circulating, Beau DeLuca did nothing to distance himself from Paul.

4.12   On or about October 1, 2019,  around 10 AM. Plaintiff met with Beau DeLuca/VP Development Accounting, who was Plaintiff's manager.  Plaintiff talked to him about the changes in staffing in CBRE and the promotions.  Plaintiff told him that she felt that she was not advancing and he was not helping her nor appreciated her contributions in the group and that she had been Senior Controller, CPA for a number of years.  He ordered Plaintiff from his office "Get out of my office".

4.13   Later that day (10/1/2019 around 3 PM), Plaintiff was having a manager meeting (Beau DeLuca, Carole, Sherry Beaumont, Paul Moore and Sara Jimmerson (who called in).  Sherry mentioned staffing and Beau yelled at her "I am working my ass off and you can contact Jim

Matoushek. I am sick of this." Plaintiff was not sure what he was sick of, her speaking up or sick of dealing with the managers.

4.14   Based on Beau's reaction to Plaintiff and to Sherry, Plaintff reported Beau to HR, Nancy Watteyne. He played favorite with Paul Moore and yelled at the rest of employees. HR investigated. Nancy Watteyne called Plaintiff later on in the month and stated the investigation was over. She told Plaintiff that Plaintiff would not be retaliated against for contacting HR. She did not elaborate what action was taken against Beau.

4.15   Every year since Plaintiff began working at Defendants, she received a raise, and told she had exceeded expectations, and she has earned two promotions. In April 2020 Plaintiff was promoted to Accounting Director making compensation of $210,662 including a 35% annual bonus.

4.16   Beau resigned effective June 2020 with two weeks' notice. Plaintiff does not believe his departure was amicable due to the short 2 weeks' notice given. Normally, a VP gives more than 2 weeks' notice when resigning.

4.17   At Plaintiff's urging to top management, Beau was asked to extend his stay through August 7 2020 to help the team with 2nd quarter 2020 accounting close. Accounting close would have been extremely difficult without Beau's assistance.

4.19   On or about January 14, 2021, through zoom meeting, Sarah Hexberg met with Plaintiff to discuss Plaintiff's YE 2020 rating. She became Plaintiff's manager after Beau DeLuca resigned in August 2020. Plaintiff asked her if she discussed the meeting with Beau. She did not respond. Plaintiff told her that she earned Exceeds Expectations in view of all the 2020 staffing challenges. Sarah stated that she did not like to give "Exceeds," which Plaintiff deemed unfair due to Plaintiff's continuous hard work and dedication. While others might work to "meet

expectations," Plaintiff's mindset as a leader of the group, had always been to exceed expectations. Through the video zoom, she could tell that Plaintiff was upset. Plaintiff had earned Exceeded Expectations in prior years 2015, 2016, 2017, 2018 and 2019. Plaintiff felt it was unfair.

4.20  Plaintiff believes she should have gone to HR to challenge the rating. Sarah was being deceitful. She purposely rated Plaintiff lower so she could promote Paul Moore. In past years, Plaintiff normally took about 20 days off. In 2020, Plaintiff took only 11 days off. Due to Plaintiff's enormous workload, it was very difficult to schedule for additional time off. During 2021, the pattern continued. TCC/CBRE policy for Plaintiff's salary level did not require tracking of PTO-paid time off. They classified Plaintiff's PTO as "Unlimited." Taking 30 days throughout the year is considered normal (includes sick and vacation days). Plaintiff worked more hours than most of the staff due to the increasing workload, deadlines and due to staff turnovers/challenges.

4.21  Wednesday April 21, 2021, through Zoom, Sarah Hexberg met with Plaintiff and started the conversation "Management asked Paul to step up." Plaintiff interrupted her as to whether Plaintiff was going to report to Paul. She said yes. Plaintiff started crying and said "It was discriminatory and is it because he is a white male and I am black. Would this be done to a white woman?" Plaintiff told her that it was not going to happen. Plaintiff told her that she was going to call HR. Plaintiff ended the call. Plaintiff had never felt so humiliated in her career after all the effort and hours she had given TCC/CBRE. Sherry Beaumont and Plaintiff knew of Paul's lack of work ethics and character/integrity from his behavior with a subordinate, Cleta Alexander, back in 2008. He looked to delegate so he did not have to continuously work extra hours.

4.22  When Plaintiff's prior manager (Beau DeLuca) resigned, Plaintiff never would have imagined that Paul Moore, who is not a CPA and had no advanced degree, would replace him and become Plaintiff's manager. Real Estate is a small world and word would get around that

Plaintiff was demoted. It is hard to go to another company and get a position similar to Plaintiff's. Plaintiff liked the company and the fact that Plaintiff had continuously proven herself to the team by being a hard worker, knowledgeable and willing to do whatever it took to meet deadlines and assist other team members. Sarah Hexberg sabotaged Plaintiff's career and leapfrogged an under-qualified person over the team.

4.23   HR emailed Plaintiff on 4/22/21 to discuss. HR scheduled a zoom call on 4/23/21- 4PM to 5 PM to discuss. Plaintiff told HR, that she felt like she got fired. Sarah promoted an unqualified white guy. HR said they would investigate.

4.24   On Friday, May 7, 2021, 10 AM- Nancy Watteyne/HR met with Plaintiff and said that the investigation was closed-no findings. She said the Controller position was posted and Paul applied. Plaintiff said why would Paul apply for a "Controller" position when his current title was "Senior Controller" and why would Plaintiff apply for a "Controller" position when Plaintiff's current title was "Accounting Director." Plaintiff told her that Paul had always been a subordinate of hers and Plaintiff was more qualified than him. Plaintiff told her that for Paul to apply, he must have gotten a heads up from Sarah Hexberg. It was underhanded and it violated company policy. Paul is not a CPA and has no advanced degree- why did he get this position? Plaintiff asked Nancy if there were someone that she could speak to regarding this besides HR and Plaintiff wanted to see the Controller posting. Nancy told Plaintiff to speak to Sarah Hexberg. Plaintiff asked her as to why the team was not told that Sarah Hexberg was an interim/temporary fill in for Beau and as to why Plaintiff was not told the position was open. Plaintiff asked Nancy as to why Plaintiff should speak to Sarah who perpetuated this situation. Nancy told Plaintiff that Plaintiff didn't get to choose Plaintiff's manager. Plaintiff went ahead and scheduled a conference call with Nancy Watteyne and Sarah Hexberg from 4 to 4:30. On the invite, Plaintiff noted that she wanted a copy

of the job posting and the timing of Paul's promotion announcement.

4.25 On Friday, May 7, 2021 -4 PM call-, they did not provide a copy of the job posting. Plaintiff was able to locate a copy of the posting on her own (the posting was dated January 14, 2021-same day she did Plaintiff's YE 2020 evaluation-she never mentioned it). Plaintiff told them how upsetting this was to her and it affected her health. They told Plaintiff that the announcement about Paul Moore's promotion was the following week (Week of May 10). Plaintiff had already submitted for PTO for Wednesday through Thursday-May 12, 13 and 14. Plaintiff told them that even if she was working, she would not attend the meeting since it was so humiliating. Plaintiff felt discriminated, devalued and demoralized. Both of them told Plaintiff that Plaintiff doesn't get to choose her manager. Nancy Watteyne /HR told Plaintiff that she should be happy that her subordinate was doing so well. HR was acting like Paul's agent and Sarah's advocate. Plaintiff told them it was being done at Plaintiff's expense and it was unfair based on Plaintiff's prior and contributions to the team.

4.26 On Wednesday, May 12, 2021, Sarah had a zoom call with the team and announced Paul's promotion. On Thursday, May 13, 2021 a formal companywide announcement went out announce Paul's promotion. His Title was announced as "Chief Accountant." In the Global E-mail /Teams Contact list, his title is listed as "Senior Director." He has 2 titles. Even though the position which he applied for and got was listed as "Controller". Sarah Hexberg and HR colluded. Since April 21, 2021, Plaintiff has been miserable and does not look forward to going to work. Plaintiff has never felt this way before.

4.27 On the morning of May 13, 2021 Plaintiff called Employee Assistance for guidance. Plaintiff was suffering from major depression. Plaintiff was crying and was a total wreck. They assigned Plaintiff a counselor within 72 hours. They were worried about Plaintiff's

mental state.  In the meantime, they gave Plaintiff a crisis center help line.  Plaintiff called and spoke with someone and told them her situation.

4.28    Since this situation at work, Plaintiff is mentally exhausted knowing what Sarah Hexberg and HR have done to Plaintiff.  Plaintiff could not believe she was working for a company which treated Plaintiff with such disrespect. Both Sarah Hexberg and HR demonstrated what TCC/CBRE's HR policy was towards Plaintiff. The stress affected Plaintiff's mental and physical well-being.  Plaintiff suffers every day having to deal with the team and what must they be thinking of Plaintiff's mistreatment? Plaintiff is in a 'no win situation" with zero support from HR who thinks Plaintiff should just accept the situation and be happy for Paul Moore.

4.29    During the week of December 5, Plaintiff got a 30-minute zoom meeting invite for December 14,2021 from Rudy Jandoc- CBRE Sr lead Investigator/Ethics and Compliance Trust Function for 10 AM.  Plaintiff inquired of him if it related to one of the development real estate projects. He responded that it did not relate to any projects and would discuss on December 14.

4.30    During the call, Rudy made statements that the conversation was confidential and neither of us should record it.  A staff member reported that Plaintiff was mean, terse and rude in an e-mail which violated TCC/CBRE's e-mail policy which could lead to termination.  The accuser stated that Plaintiff gets frustrated and mean when Plaintiff doesn't know how to get information. Plaintiff asked him to disclose the person's name and he responded that he could not disclose the accuser's name under CBRE's policy.  Plaintiff told him that only 2 staff members came to mind- Nancy French or Monica Potts. Plaintiff stated that Nancy left the company and Plaintiff was aware that the constant follow-up with her regarding her work and missed deadlines did get intense.

4.31    Since Plaintiff assumed it was Monica, Plaintiff went into specific details about her recent interaction with her. Monica Potts-Assistant Controller who reports to Paul Moore/Chief

Accountant/Senior Director was leaving the accounting team and moving over to the IT team. In her current role, Monica handled setting up project numbers, legal entities, daily job/cost codes requests from over 12 field offices, setting up new users and deleting terminated users under the prior accounting system; monitoring system upgrades/updates. After the conversion to the new accounting system, Sarah Hexberg and Paul Moore decided that a major part of Monica's prior responsibilities would be transitioned to the managers (including Plaintiff). Paul was not assuming any of the responsibilities. All the managers names were added to this new e-mail group to monitor and handle form requests. The managers have been vocal stating they do not have capacity to absorb it and they should hire someone to perform those tasks along with other tasks that are being dumped on the team. Sherry Beaumont's team has missed client reporting deadlines due to work overload, staff turnovers, etc. Monica had zero GL accounting close and client reporting responsibilities/deadlines and therefore had time to process forms and tend to system upgrades/updates.

  4.32 Sarah and Paul are going forward with re-assigning the tasks over the managers' objections. On December 3 2021, Plaintiff did get frustrated with Monica requesting that Plaintiff complete a legal entity set up form which Plaintiff submitted to her Mid-November 2021. Plaintiff thought she had everything she needed to set it up. On December 3 (Critical Day 3 of November close), she still had not set up the project along with 3 other entities that Plaintiff needed for November close. Plaintiff told her to schedule a meeting with Plaintiff that day through Teams to get it resolved. They had a Teams meeting/shared their screen and went over the form for the initial legal entity request which by the way had the information she needed. She was still looking at an old attachment which had the missing information. The whole time she kept requesting that Plaintiff fill in the missing information. Plaintiff did not know what was still missing since it

looked completed to her. They went over the latest 3 legal entities which needed information. Monica than stated "I know you are mad at me for all the emails." Plaintiff admitted to her that she was frustrated and annoyed since Plaintiff was very busy and short staffed. Plaintiff felt Monica could have been more helpful. Monica said that all the managers needed to start learning how to complete the forms themselves since she would not be able to assist the manages once she switches department -due to SOX controls which require segregation of duties. Monica told Plaintiff that her official last day in their accounting team was December 10, 2021. Monica will be the IT person who the managers will be sending certain forms to so she can generate certain codes. The conversion to the new system and dealing with the conversion team was and is a total mess and disaster. There were quite a few errors in the system set up which slowed down the effectiveness of their accounting team to pay vendors and close the books for October and November. Plaintiff told Monica that she would complete and forward the remaining forms. Plaintiff completed the forms for the other 3 entities and e-mailed them to her that evening and considered the whole issue with her a closed matter.

  4.33 Plaintiff believes Monica went back and told Paul and Sarah about Plaintiff's interaction with her and they escalated it to Rudy. Rudy did not admit or deny if it was Monica. He wanted names of other staff members who could substantiate the dynamics of the team. Plaintiff provided 2 names. Plaintiff was not sure why Rudy got involved. The normal chain of command should have been Monica going to Paul; Paul discussing it with Plaintiff (and possibly HR) and producing the e-mails which were deemed mean, terse and rude. Plaintiff feels that she is being set up for defamation of Plaintiff's character.

**V.**

# FIRST COUNT

## 42 U.S.C. § 1981 – RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

5.01.   The foregoing paragraphs of this Complaint are incorporated in this count by reference as fully as if set forth at length herein.

5.02.   42 U.S.C. §1981 provides that:

"**§ 1981.  EQUAL RIGHTS UNDER THE LAW**

(a)   Statement of equal rights. – All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)   'Make and enforce contracts' defined. – For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c)   Protection against impairment. – The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State Law."

5.03   Defendants have deprived Plaintiff of her right to make and enforce contracts and to "the full and equal benefit of all laws and proceedings" as is enjoyed by white citizens, in violation of 42 U.S.C. § 1981.

5.04   Defendants have engaged in a single, continuous course of conduct of discrimination against Plaintiff because of her race, and in retaliation, in order to destroy Plaintiff, her career, and her professional life.

5.05   Such discrimination by Defendants against Plaintiff was intentional and was a motivating factor in Defendants' conduct toward Plaintiff.  Accordingly, Plaintiff is entitled to recover damages from Defendants for past and future lost compensation, overtime pay, past and

future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses. Further, this discrimination was done by Defendants with malice or with reckless indifference to Plaintiff's federally protected rights. Plaintiff is therefore also entitled to recover punitive damages in a sum which is in excess of the minimum jurisdictional limit of this Court. Plaintiff also seeks to recover all costs of Court, attorney's fees, and expert fees.

## VI.

## SECOND COUNT

### DISCRIMINATION, RETALIATION, HARASSMENT AND HOSTILE ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

6.01  The foregoing paragraphs of this Complaint are incorporated in this Count by reference as fully as if set forth at length herein. This Count is pleaded in the alternative to the First Count.

6.02  Each Defendant employs at least fifteen (15) employees and are employers within the meaning of Title VII.

6.03  Defendants have violated Title VII, by discriminating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's race and sex.

6.04  All conditions precedent to filing this action for discrimination have been met. Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") Charges of Discrimination against Defendants. Plaintiff has received a Notice of Right to Sue from the EEOC within 90 days of the filing of this Complaint.

6.05    Defendants have engaged in a single continuous course of conduct of discrimination against Plaintiff because of her race and sex.  Discrimination, retaliation, harassment and creation of a hostile environment were motivating factors in Defendants' conduct toward Plaintiff.

6.06    Such discrimination, retaliation, harassment and creation of a hostile environment by Defendants against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages from Defendants for past and future lost compensation, overtime pay, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses.  Further, this discrimination was done by Defendants with intentional malice or with reckless indifference to Plaintiff's protected rights.  Such discrimination, retaliation, harassment and creation of a hostile environment constitute gross, wanton, reckless, and/or intentional violation of Plaintiff's rights.  Plaintiff is therefore also entitled to recover punitive damages in a sum which is in excess of the minimum jurisdictional limit of this Court.  Plaintiff is also entitled to recover all costs of Court, attorney's fees and expert fees as allowed by Texas Labor Code '21.259.

## VII.

## JURY DEMAND

7.01 Plaintiff demands trial by jury on all issues raised by this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final trial, Plaintiff have the following relief against Defendant:

1.    Judgment for past and future lost compensation, and all past and future lost benefits, including overtime pay;

2. Judgment for actual damages in the amount of past and future lost earnings and benefits, and damages to past and future earnings capacity;

3. Compensatory damages for the humiliation, damage to reputation, mental and emotional distress, and pain and suffering Plaintiff has experienced and endured as a result of the discriminatory actions of Defendant;

4. The costs and expenses incurred by Plaintiff in seeking new employment;

5. Damages for past and future mental anguish and emotional distress and damages to reputation;

6. Exemplary damages in an amount determined by the trier of fact;

7. Prejudgment and postjudgment interest at the maximum legal rate;

8. Preliminary and permanent injunctive relief;

9. Attorney's fees;

10. Expert's fees;

11. All costs of court; and

12. Such other and further relief to which Plaintiff may be justly entitled.

Dated: This 11th day of January 2022.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*
W.D. MASTERSON
State Bar No. 13184000
3109 Carlisle Street
Dallas, TX 75204-2471
(214) 969-9099 - Telephone
(214) 953-0133 - Fax
wdm@kilgorelaw.com

**ATTORNEYS FOR PLAINTIFF
CAROLE BERNARD-PIPER**